# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KELLY HESPE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 13 C 7998 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| CITY OF CHICAGO, GERALD ) | |
| BREIMON, and SARAH MCDERMOTT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendants' motion [151] for ruling on their objections to Magistrate Judge Mason's ruling in his April 27, 2016 Order [147].[1] For the reasons stated below, the Court overrules defendants' objections.

## BACKGROUND

Plaintiff Kelly Hespe, a Chicago police officer, filed this lawsuit against the City of Chicago and two individual Chicago police officers. Plaintiff's central claim is sex discrimination and hostile work environment under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* As Magistrate Judge Mason summarized in the Order defendants now challenge, plaintiff alleges that her supervisor, defendant Gerald Breimon, "sexually harassed her by pursuing a romantic relationship with her for over three years, . . . the City created a hostile work environment by failing to take prompt action to protect her, and . . . [defendant Sarah] McDermott threatened to harm plaintiff, in part, because she rebuffed Breimon's attention." (Apr. 27, 2016 Order, ECF No. 147, at 1.) The defendants' position is that Breimon and plaintiff

---

[1] The Court notes that, although Magistrate Judge Mason's Order was internally dated April 27, 2016, the Order was actually entered on the court's electronic docket on April 26, 2016. (*See* ECF No. 147.) In their briefs, the parties have described the Order as dated April 27, 2016, and for the sake of consistency, this Court will follow their lead in this Memorandum Opinion and Order.

were in a fully consensual, romantic relationship, and there was no unwelcome harassment or discrimination.

In response to discovery requests, plaintiff produced numerous photographs, voice mail messages, emails and text messages that she had received from Breimon. Defendants learned during the October 22, 2015 deposition of plaintiff's mother, Susan McKay, that McKay was in possession of thousands of additional voice mail and text messages. At plaintiff's November 30, 2015 deposition, plaintiff confirmed that she had sent these materials to her mother for safekeeping because she was running out of space on her computer.

On December 30, 2015, pursuant to subpoena, McKay produced to defendants all the electronically stored information ("ESI") concerning plaintiff and Breimon that was in her possession. In particular, she produced 5,748 text messages, a number that dwarfed the 850 plaintiff had initially produced in this case. Based in part on the discovery of this additional information, defendants filed a motion to extend the discovery deadline and compel plaintiff to submit to an extension of her deposition. Magistrate Judge Mason, who supervised discovery in this case (*see* ECF No. 67), granted the motion in part, extending the discovery deadline to March 16, 2016, and granting defendants leave to depose plaintiff for three and a half additional hours. (*See* Jan. 7, 2016 Order, ECF No. 118; Feb. 17, 2016 Order, ECF No. 131.) Judge Mason warned that no further discovery extensions would be granted. (ECF No. 131, at 5.)

Defendants deposed plaintiff again on March 2, 2016. At the conclusion of the deposition, defense counsel informed plaintiff that she "would like an opportunity to inspect plaintiff's computer . . . and her cell phone" to search for any unproduced communications with Breimon. (Excerpts of Pl.'s Dep., 516:3-7, ECF No. 133-2, at 96.) Plaintiff's counsel stated that he opposed the request.

After attempting to confer with plaintiff, as required under Rule 37(a)(1), defendants filed a motion to extend discovery and compel plaintiff to produce her electronic devices for inspection, arguing that they could not rely on plaintiff's representation that she had produced all the ESI documenting her correspondence with Breimon because, at her March 2, 2016 deposition, she had made ambiguous statements about the manner and completeness of her production. According to defendants, plaintiff admitted at the March 2 deposition that "the McKay text messages were saved on her (Plaintiff's) home computer," although McKay produced them to defendants and plaintiff did not; plaintiff gave her attorneys "some" of the McKay text messages at one point, but she was unsure when or whether she gave them all of them; and plaintiff took no specific steps to preserve electronically stored information ("ESI"), although she did not intentionally delete anything other than "dirty" pictures Breimon had sent her. (Mot. ¶ 18, ECF No. 133; Mot., Ex. 3, Excerpts of Pl.'s Dep., 501:16-503:22, 506:6-510:21, 512:4-516:9, ECF No. 133-2, at 84-96.) Defendants sought to perform a forensic inspection of plaintiff's devices to search for unproduced ESI and attempt to recover any relevant ESI that may have been deleted.

In his April 27, 2016 Order (ECF No. 147), Magistrate Judge Mason denied the motion to compel. Judge Mason explained that the requested forensic inspection of plaintiff's electronic devices was not proportional to the needs of the case, especially considering plaintiff's privacy and confidentiality interests in her personal devices. Further, Judge Mason reasoned that the motion was not based on any new developments that truly arose at the March 2 deposition; rather, to the extent there was any reason to doubt the completeness of plaintiff's production, it had arisen months before then.

Defendants timely filed objections to Judge Mason's Order.

## DISCUSSION

### I. Legal Standards

Where, as here, a district court considers timely objections to a magistrate judge's rulings on nondispositive matters, the magistrate judge's rulings will be modified or set aside only if they are "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a); *see also Domanus v. Lewicki*, 742 F.3d 290, 295 (7th Cir. 2014). Under the clear-error standard of review, "the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[2]

Rule 26(b) provides a burden-shifting procedure for determining whether to impose limitations on discovery of ESI if the responding party identifies the requested discovery as not reasonably accessible due to undue burden or cost:

> **(2)** *Limitations on Frequency and Extent.*
> . . . .
> **(B)** *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible

---

[2] Rule 26 was amended effective December 1, 2015—after the commencement of this case. The Supreme Court ordered that the amendments "shall take effect on December 1, 2015, and shall govern in all proceedings thereafter commenced ***and, insofar as just and practicable, all proceedings then pending***." https://www.supremecourt.gov/orders/courtorders/frcv15_5h25.pdf. The principle of proportionality articulated in Rule 26(b)(1) was essentially already applicable based on Rule 26(b)(2)(C)(iii), so there is no injustice or impracticability in applying the amended rule at this point in plaintiff's case. *See Pertile v. Gen. Motors, LLC,* No. 15cv518, 2016 WL 1059450, at *2 (D. Colo. Mar. 17, 2016).

because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Rule 26(b) also permits the court to impose additional limitations if a discovery request is cumulative, late, or out of proportion to the needs of the case:

> **(C)** *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> **(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> **(iii)** the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Rule 34 governs requests for inspection of an opposing party's electronic devices or ESI:

> A party may serve on any other party a request within the scope of Rule 26(b):
> **(1)** to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
> **(A)** any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
> **(B)** any designated tangible things . . . .

## II. Rule 26(b)(2)(B)—Specific Limitations on ESI

Defendants begin by arguing that Judge Mason failed to correctly apply Rule 26(b)(2)(B), which puts the burden on the party opposing a request for production of ESI to show that "the information is not reasonably accessible because of undue burden or cost." Only if that showing is made must the requesting party show "good cause" for requesting the production. Defendants argue that plaintiff never met her burden of showing any "undue burden or cost," and in any case, defendants clearly demonstrated that there was "good cause" for

inspecting plaintiff's electronic devices for unproduced electronic communications between Breimon and plaintiff.

This argument is out of place in this case because Judge Mason did not misapply Rule 26(b)(2)(B). He did not apply it at all, nor was he required to do so. Even assuming that defendants' request for inspection should have been allowed under Rule 26(b)(2)(B), Rule 26(b)(2)(C) permits a court to "limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . (i) the discovery sought is unreasonably cumulative or duplicative; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." It is clear from the language of Judge Mason's Order that his decision to limit discovery in this case was based on proportionality and timeliness, which are proper bases for his ruling under Rule 26(b)(2)(C)(ii) and (iii).

**III.    Rule 26(b)(2)(C)(iii)—Scope of Discovery Under Rule 26(b)(1) and Proportionality**

Rule 26(b)(2)(C)(iii) incorporates by reference Rule 26(b)(1), which, as Judge Mason explained, requires discovery to be "proportional to the needs of the case." Judge Mason explained that defendants' request to perform a forensic inspection of plaintiff's electronic devices for ESI was not proportional to the needs of the case because plaintiff had turned over all the ESI defendants had requested, which was presumably all the ESI she possessed, and in any case "the burden and expense of inspecting plaintiff's devices and online accounts likely outweigh any benefit because copies of the documents and communications are sufficient to defend [against] plaintiff's claims in this discrimination case." (Apr. 27, 2016 Order, ECF No. 147, at 3.) Moreover, Judge Mason explained, inspection of plaintiff's electronic devices is not

"proportional to the needs of this case" because any benefit the inspection might provide is "outweighed by plaintiff's privacy and confidentiality interests." (*Id.*)

The discovery process is designed to be extrajudicial, and it relies on responding parties to search their own records and produce documents or other data. *See Powers v. Thomas M. Cooley Law Sch.*, No. 5:05-CV-117, 2006 WL 2711512, at *5 (W.D. Mich. Sept. 21, 2006). The Advisory Committee Notes to Rule 34 recognize that courts must use caution in evaluating requests to inspect an opposing party's electronic devices or systems for ESI, in order to avoid unduly impinging on a party's privacy interests:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to **Rule 34(a)** with regard to documents and electronically stored information ***is not meant to create a routine right of direct access to a party's electronic information system***, although such access might be justified in some circumstances. ***Courts should guard against undue intrusiveness*** resulting from inspecting or testing such systems.

Fed. R. Civ. P. 34, Advisory Committee Notes—2006 Amendment (emphasis added). Numerous courts have also recognized this need to "guard against undue intrusiveness" and to be "cautious in requiring" the forensic inspection of electronic devices, in order to protect privacy interests. *See John B. v. Goetz*, 531 F.3d 448, 459-60 (6th Cir. 2008) (citing cases and concluding that the "compelled forensic imaging orders here fail[ed] to account properly for . . . significant privacy and confidentiality concerns"). "Mere suspicion" or speculation that an opposing party may be withholding discoverable information is insufficient to support an "intrusive examination" of the opposing party's electronic devices or information systems. *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-CV-899, 2007 WL 1723509, at *2 (S.D. Ohio June 12, 2007). In particular, a court must be cautious "where the request is overly broad in nature and where the connection between the party's claims and the [electronic device] is

7

unproven." *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 900-01 (S.D. Tex. 2015) (collecting cases); *see also Kickapoo Tribe of Indians of Kickapoo Reservation in Kan. v. Nemaha Brown Watershed Joint Dist. No. 7*, 294 F.R.D. 610, 619 (D. Kan. 2013) (denying a request to inspect personally-owned devices of defendant's employees in part because "the Court [had] significant concerns regarding the intrusiveness of the request and the privacy rights of the individuals to be affected").

However, when the requesting party is able to demonstrate that "the responding party has failed in its obligation to search its records and produce the requested information," *Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14CV78, 2016 WL 3945676, at *2 (S.D. Miss. July 19, 2016), an inspection of the responding party's electronic devices may be appropriate. *See, e.g., Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 1764829, at *3 (S.D. Fla. June 22, 2009); *Jacobson v. Starbucks Coffee Co.*, No. 05-1338, 2006 WL 3146349, at *6-7 (D. Kan. Oct. 31, 2006). Further, courts may be somewhat less wary of requests to inspect electronic devices when there is a substantiated connection between the device the requesting party seeks to inspect and the claims in the case, or, as one court put it, where the "contents of the [device] go to the heart of the case." *Hedenburg v. Aramark Am. Food Servs.*, No. C06-5267, 2007 WL 162716, at *2 (W.D. Wash. Jan. 17, 2007); *see Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 686 (S.D. Fla. 2012) (forensic search of responding party's information systems might reveal maintenance records and work orders that responding party appeared to have attempted to hide by shredding hard-copy records, and that might reveal critical facts concerning when the claimed damage to the responding party's property occurred); *Townsend v. Ohio Dep't of Transp.*, 2012-Ohio-2945, ¶¶ 24-25, 2012 WL 2467047, at *7-8 (Ohio Ct. App. 10th Dist. June 28, 2012) (court permitted plaintiff to search defendant's email system for emails that two

8

witnesses recalled exchanging but could not produce and that, if found, would prove notice to defendant of clogged drain that caused the flooding that resulted in plaintiff's injury); *cf. Kickapoo Tribe*, 294 F.R.D. at 618-19 (citing and distinguishing cases).

Defendants have not demonstrated that the contents of plaintiff's devices are likely to go to the heart of this case. This case is similar to *Hedenburg*, an employment discrimination case in which the defendant sought forensic imaging of the plaintiff's personal home computer, seeking correspondence plaintiff might have sent that might be inconsistent with her testimony in the case. The plaintiff objected to the discovery as a fishing expedition. The court recognized that it had permitted forensic imaging of computers in cases where the "contents of the computer go to the heart of the case," such as in trade secret cases, where "one party demonstrate[d] the likelihood that trade secrets were forwarded to or sent by [the computer]." *Hedenburg*, 2007 WL 162716, at *2; *see also Byrne*, 123 F. Supp. 3d at 900-01, 908-09. But in *Hedenburg*, an employment discrimination case, "the central claims in the case [were] wholly unrelated to the contents of plaintiff's computer." 2007 WL 162716, at *2. The plaintiff claimed to have made a diligent search of the computer and turned over all responsive information, so the defendant's request for forensic imaging was "essentially [for] a search warrant to confirm that Plaintiff has not memorialized statements contrary to her testimony in [the] case. If the issue related to a lost paper diary, the court would not permit the Defendant to search the plaintiff's property to ensure that her search was complete." *Id.* at *2. The court denied the motion to compel.

In this case, as in *Hedenburg*, defendants essentially seek a warrant to search plaintiff's devices for statements with which to impeach her.[3] Their request to search plaintiff's devices is

---

[3] Defendants argue that even balancing plaintiff's privacy interests against defendants' concerns about unproduced or lost ESI, Judge Mason erred by denying the motion to compel when he could have devised and imposed a search protocol that would have protected plaintiff's private, irrelevant information. *See, e.g., United Factory Furniture Corp. v. Alterwitz*, No. 2:12-cv-059, 2012 WL 1155741, at *5-6 (D. Nev. Apr. 6, 2012). But defendants did not

9

closer to a "blind" attempt to "find something useful [for their] impeachment of the plaintiff" than to a request to search devices that have been shown to contain information going to "the heart of the case." *See id.* True, plaintiff's complaint does specifically refer to text messaging in describing some of the harassment plaintiff suffered in 2012, so there is a limited sense in which text messaging is at the "heart" of this case—but there is no dispute that McKay produced to defendants several thousand text messages from that time period, and defendants have not provided any compelling reason to believe that this production is incomplete.

The reason defendants give for seeking a forensic search of plaintiff's devices is to find ESI to support their position that Breimon and plaintiff were in a consensual, romantic relationship (*see* Defs.' Objections, ECF No. 151-1, at 6), but plaintiff all but conceded that point in her brief in opposition to defendants' motion to compel before Judge Mason, in which she admitted testifying that she had been in a sexual relationship with Breimon, she believed she loved Breimon at one time, and she told Breimon she loved him in 2009. (Pl.'s Resp. Opp. Mot. Compel, ¶ 82, ECF No. 137.) Importantly, defendants do not request to search for any specifically identified text message or messages with particular content that they have shown to have existed at one point and that, if found, will conclusively resolve a contested issue in the case. *Cf. Townsend*, 2012-Ohio-2945, at ¶ 17 ("[T]he importance of the Marszal email cannot be underestimated."). The search defendants want to perform does not go to the "heart" of this case because it does not seek evidence that will conclusively resolve critical factual issues, and even if defendants find evidence they do not already have, they have not demonstrated that the evidence is likely to be more probative than the admissions they do have.

---

suggest any such protocol or request a limited search. As in *Hedenburg*, they sought what was essentially an unrestricted "search warrant" for ESI, and Judge Mason did not err in treating the request as such.

10

Defendants argue that plaintiff is at fault for failing to produce more ESI, regardless of whether her failure in that regard is due to an innocent lack of sophistication in retrieving responsive ESI, negligence, or intentional manipulation of evidence, and that plaintiff's fault justifies a forensic inspection. Defendants' position is largely based on statements plaintiff made at her March 2, 2016 deposition, but the Court has reviewed the excerpts of the transcript that defendants have submitted (ECF No. 133-2, at 75-96), and it fails to see the evidence of fault that defendants describe.

Defendants place great importance on the fact that plaintiff admitted that she had the 5,748 text messages that McKay produced on her home computer, characterizing this statement as an admission that she had withheld documents in discovery because, if plaintiff had the text messages on her own computer, she should have produced them herself. But in its full context, this statement is not the smoking gun defendants make it out to be. At the March 2, 2016 deposition, plaintiff testified not that she has always had the text messages but that she presently has them "because [McKay] gave me a disk or a thing." (Excerpts of Pl.'s Dep., 510:17-18, ECF No. 133-2, at 91.) It is unclear from the transcript excerpt that defendants have provided when plaintiff received this "disk" or "thing"; for all the transcript shows, she may have received it only after McKay had already produced it to defendants. Plaintiff then answered a follow-up question about whether there was "also a copy saved to [her] computer" with, "I—there's a—yeah. Probably. I don't know," which is hardly a definitive answer. As defendants have done previously in this case, they are failing to recognize plaintiff's occasional confusion for what it is. (*See* Jan. 7, 2016 Order, ECF No. 188, at 3) (Mason, J.) (warning defendants against mischaracterizing plaintiff's confusion and failure to recall details as evasiveness). Plaintiff's

testimony on this point is not sufficiently developed to permit any clear inferences or conclusions one way or another.

Similarly, defendants claim that, in response to questioning, plaintiff said that she would have to refer to text messages in order to refresh her memory. Since defendants are unable to identify which messages plaintiff is referring to, they presume that plaintiff must be referring to text messages that she has not produced. But plaintiff's testimony does not warrant any such inference. When plaintiff answered that she did not know or could not recall the answer to a question, and defendants followed up by asking what would refresh her memory, she sometimes responded "voicemails" or "text messages" or both, but these responses were vague, generalized and non-specific. Plaintiff never referred to specific voicemails or text messages that could be identified by any specific factual details. *Cf. Townsend*, 2012-Ohio-2945, at ¶¶ 11-12. It may well be that no such text messages or voicemails ever actually existed, and it appears that plaintiff was simply speculating about what might refresh her memory rather than risk sounding evasive by answering, "I don't know."

Defendants also argue that plaintiff had a duty to preserve any ESI bearing on her relationship with Breimon, and when asked what steps she took to preserve ESI, she answered that she never deleted anything other than nude pictures Breimon sent her, but took no other steps to preserve evidence. (Excerpts of Pl.'s Dep., at 501:16-503:22, ECF No. 133-2, at 84-86.) Again, the Court fails to see any evidence of misconduct or any reason to conclude that plaintiff is hiding any ESI. Plaintiff often seemed confused about how many text messages, voice mails and other electronically stored communications she had, when she had them, and when and to whom she produced them, but this does not strike the Court as surprising, considering there were thousands of electronic communications and this case has been going on for years. At worst,

plaintiff may have failed to prevent some relevant ESI from being unintentionally deleted from her devices due to her unsophisticated grasp of how her iPhone and associated software applications (such as iTunes) store data. But defendants have not shown that this failure was anything but accidental, nor have they shown the importance of any lost ESI, which, even if recovered, will apparently do little more than duplicate admissions plaintiff made during her deposition. (*See* Pl.'s Resp. Opp. Mot. Compel, ¶ 82, ECF No. 137.) Further, whether the forensic inspection might recover any lost or deleted ESI appears to be little more than speculative. (*See* Reply Br., Ex. 1, Affidavit of Computer Forensic Specialist Daniel E. Roffman, ECF No. 162-2.) Additionally, as the Court will discuss in more detail below, defendants had more than enough notice of this lack of sophistication to bring a motion to compel a forensic inspection long before the March 2, 2016 deposition.

The evidence of fault is sparse at best, and, when this evidence is weighed against (1) plaintiff's interest in protecting her privacy rather than allowing unfettered access to her personal devices and (2) the generic and apparently inconclusive nature of the unspecified ESI for which defendants want to search, it is insufficient to justify a forensic inspection. Judge Mason did not clearly err in ruling that the inspection defendants seek is not proportional to the needs of the case.

## IV.  Rule 26(b)(2)(C)(ii)—Prior Opportunity to Obtain the Discovery in the Action

Judge Mason also based his ruling in part on the fact that defendants had had earlier opportunities to seek an inspection of plaintiff's devices. *See* Rule 26(b)(2)(C)(iii). Judge Mason explained that defendants had known for months that plaintiff had made somewhat of a piecemeal document production in this case, but they did not request forensic inspection until the eve of the close of discovery, after Judge Mason had warned them that there would be no further

13

discovery extensions. Defendants object that they did not know and could not have known for certain until after questioning plaintiff about the McKay production at the March 2 deposition, when plaintiff seemed at best uncertain about what ESI she had preserved, that she was either hiding ESI or she lacked the sophistication to determine whether she could retrieve and produce additional ESI.

As explained above, this Court agrees with Judge Mason that plaintiff made no bombshell revelation of unproduced ESI at the March 2, 2016 deposition. The Court also agrees that defendants could have sought inspection of plaintiff's devices based on an apparent lack of sophistication well before then. Even giving defendants the benefit of the doubt with respect to their position that they owed plaintiff an opportunity to fully explain her piecemeal production before taking the drastic step of requesting to inspect her devices, it was clear based on plaintiff's statements at the November 30, 2015 deposition that plaintiff's methods of preserving her electronic communications with Breimon were unsophisticated at best. She showed that she did not have a firm grasp of how iTunes backups work or what data from what time periods her iTunes backups might have preserved or failed to preserve; it was apparently an accident that the iTunes backups preserved any data at all. (Excerpts of Pl.'s Dep., 284:3-287:1, ECF No. 133-2, at 62-65.) Further, there were discrepancies in her testimony and her production. As Judge Mason recognized, plaintiff stated at the November 30, 2015 deposition that she believed she had created more than ten notes on her cell phone to document harassment (*id.*, 243:7-245:13, ECF No. 133-2, at 53-55), but plaintiff turned over only one such note in discovery (Mot. Compel, ¶ 7, ECF No. 133). (*See* Apr. 27, 2016 Order, ECF No. 147, at 4.) If defendants believed that a comprehensive review of every text message, voice mail, or note that she and Breimon had ever exchanged was necessary to defend this case (and as the Court has explained above, it does not

agree), then they had grounds to ask for an inspection of plaintiff's devices after the November 30 deposition. Judge Mason did not clearly err by denying the motion to compel a forensic inspection based in part on the fact that it could have been brought earlier.

## CONCLUSION

For the reasons set forth above, defendants' motion [151] for ruling on their objections is granted, and defendants' objections to Magistrate Judge Mason's April 27, 2016 Order [147] are overruled.

**SO ORDERED.**                                                       **ENTERED:  December 15, 2016**

                                                                                        _____
                                                                                        **JORGE L. ALONSO**
                                                                                        **United States District Judge**