**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KELLY HESPE, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>CITY OF CHICAGO, a municipal corporation, )<br>CHICAGO POLICE SERGEANT )<br>GERALD BREIMON, and )<br>LIEUTENANT SARAH MCDERMOTT, )<br>)<br>Defendants. ) | Case No. 13 C 7998<br>Hon. Jorge L. Alonso |

**PLAINTIFF'S RULE 59(E) MOTION TO ALTER OR AMEND
SUMMARY JUDGMENT IN FAVOR OF CITY OF CHICAGO AS TO COUNT I**

Plaintiff, KELLY HESPE, herein ("Hespe"), moves this Court to reconsider grant of summary judgment as to Count I in favor of Defendant, the City of Chicago, herein ("Defendant") on April 14, 2017. In support hereof, Hespe states as follows:

### I. BACKGROUND

Plaintiff Hespe filed a twelve-Count Complaint on November 7, 2013. Only nine of the twelve Counts were involved in the summary judgment proceedings. Summary judgment was granted in favor of Defendant City of Chicago as to Count I (Title VII sexual harassment) and Count II (Title VII retaliation). Summary judgment was denied to City of Chicago as to Count XI (respondent superior) and Count XII (indemnification). Summary judgment was denied to Defendant Sergeant Gerald Breimon ("Sgt. Breimon") as Count III (Section 1983) and Count VII (Illinois Gender Violence Act). Summary judgment was granted to Sgt. Breimon as to Count VIII (intentional infliction of emotional distress). Summary judgment was granted to Defendant Lieutenant Sarah McDermott as to Count IX (assault) and Count X (intentional infliction of emotional distress). This motion for reconsideration is brought only as to grant of summary

1

judgment to Defendant City of Chicago as to Count I for Title VII sexual harassment. Plaintiff Hespe requests that this Court reconsider its application of law to the facts and rule that Defendant employee Sgt. Breimon is a "supervisor" for purposes of vicarious liability under Title VII and is thus empowered by Defendant employer City of Chicago to take tangible employment actions against Plaintiff Hespe.

## II. STANDARD OF REVIEW

Under Federal Civil Procedure Rule 59(e), a district court reviews its prior judgment to determine whether "there exists a manifest error of law or fact so as to enable the court to correct its own errors and thus avoid unnecessary appellate procedures." *Divane v. Krull Elec. Co., Inc.*, 194 F.3d 845, 847 (7th Cir. 1999), citing *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). See also *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence. *Obriecht*, 517 F.3d at 494.

## III. ARGUMENT

In *Vance v. Ball State University,* 133 S.Ct. 2434, 2443 (2013), United States Supreme Court the held that: "an employer may be vicariously liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment actions against the victim, i.e., to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" (citation omitted).

In addressing the dissent's concerns and citing *Rhodes v. Illinois Dept. of Transp.,* 359 F.3d 498, 509 (7th Cir. 2004), the *Vance* Supreme Court explained that when an employer confines "decision making power to a small number of individuals, those individuals will have a limited ability to exercise independent discretion when making decisions and will likely rely on other

2

workers who actually interact with the affected employee." *Vance,* 133 S.Ct. at 2452. The *Vance* Supreme Court ruled that "[u]nder those circumstances, the employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose *recommendations* it relies." *Vance,* 133 S.Ct. at 2452 (emphasis added). Specifically, the *Vance* Supreme Court ruled:

> If an employer does attempt to confine decision making power to a small number of individuals, those individuals will have a limited ability to exercise independent discretion when making decisions and will likely rely on other workers who actually interact with the affected employee. Cf. *Rhodes v. Illinois Dept. of Transp.,* 359 F.3d 498, 509 (C.A.7 2004) (Rovner, J., concurring in part and concurring in judgment) ('Although they did not have the power to take formal employment actions vis-à-vis [the victim], [the harassers] necessarily must have had substantial input into those decisions, as they would have been the people most familiar with her work — certainly more familiar with it than the off-site Department Administrative Services Manager'). Under those circumstances, the employer may be held to have effectively delegated the power to take tangible employment actions to the employees on whose *recommendations* it relies. [citation omitted].

*Vance,* 133 S.Ct. at 2452 (emphasis added). Herein, by Special Order S03-03-01 (Pl. Ex. G, HES004290, Docket #: 187-9, pg. 17 of 25), the City of Chicago delegated powers to sergeants to make recommendations as to remedial or disciplinary action for inefficient, or incompetent performance, on which the City of Chicago, as employer, relied.

Whether Sgt. Breimon was a "supervisor" is disputed. However, in accord with *Vance,* the evidence in the record establishes circumstances such that the City of Chicago may be held to have effectively delegated the power to take tangible employment actions to sergeants who recommend discipline which is ultimately relied on for tangible employment actions.

This Court should reconsider because the evidence in the record establishes the existence of a chain of command which commences with the first-line supervision, then progresses through various levels which may ultimately lead to tangible employment actions. As the first-line of

3

supervision with authority to make recommendations for discipline relating to performance, Sgt. Breimon's recommendations for remedial or disciplinary action for inefficient or incompetent performance could lead to tangible employment actions; namely, firing, failing to promote, reassignment with significantly different responsibilities.

Breimon admitted that as a sergeant he can give orders to police officers. (Pl. 56.1(b)(3)(C) ¶ 18). Specifically, included in Breimon's duties as a CPD Sergeant is monitoring behavior and performance of subordinates and their adherence to CPD policies and procedures; taking appropriate action when deficiencies in performance, uniform, and/or equipment are observed; recommending remedial or disciplinary action for inefficient performance; and imposing summary punishment for less serious transgressions. (Pl. 56.1(b)(3)(B) ¶ 15).

Further, as a CPD Sergeant, Breimon's duties required him to submit a daily Supervisor's Management Log and any corrective/disciplinary action taken must be entered on the log during the sergeant's tour of duty. (Pl. 56.1(b)(3)(B) ¶ 15). Part of Breimon's duties as a sergeant included rotating a schedule for police officers to be assigned to seat belt missions; Breimon had the discretion as to which vehicle he wished to assign to the mission unless a Lieutenant indicated otherwise. (Pl. 56.1(b)(3)(B) ¶ 15).

Breimon was able to put Plaintiff on his supervisor management log, he would put Plaintiff and her partner down on missions to take lunch with him. (Pl. 56.1(b)(3)(C) ¶ 5). Plaintiff could not perform her job duties because Breimon constantly texted and called Plaintiff while at work and constantly demanded that she text him and answer his phone calls; he insisted that Plaintiff meet him in the park at work in front of her partners, meet him early before work and stay late at work. ( (Pl. 56.1(b)(3)(C) ¶ 7). Breimon commented to PO Ricken that he was riding on Plaintiff's jobs to keep an eye on her and make sure nobody got her in trouble because

4

people on the watch had it out for her. (Pl. 56.1(b)(3)(C) ¶ 8). Breimon would also follow Plaintiff on her jobs as a backup. (Pl. 56.1(b)(3)(C) ¶ 9). PO Del Pilar stated that Breimon showed up on all of Plaintiff's jobs. (Pl. 56.1(b)(3)(C) ¶ 10). Breimon constantly texted Plaintiff and demanded her to answer his phone calls and texts. (Pl. 56.1(b)(3)(C) ¶ 14). Plaintiff was unable to perform her duties because Breimon constantly harassed and demanded her to do sexual things at work. (Pl. 56.1(b)(3)(C) ¶ 15). When Plaintiff refused to have sex with Breimon at work, he physically harmed Plaintiff, and on one occasion threw his cell phone at Plaintiff while in squad [sic]. (Pl. 56.1(b)(3)(C) ¶ 16).

### Plaintiff's Exhibit G

Specifically, Plaintiff's Exhibit G, Special Order S03-03-01 sets forth the "Responsibilities of Sergeants Assigned to Field Activities" (HES004289-4290, Docket #: 187-9). Sub-section B of Section V under "Discipline Functions" provides that one of the responsibilities delegated to Sergeants is "*recommending* remedial or disciplinary action for inefficient, or incompetent performance," and ". . . summary punishment . . . for less serious transgressions." (Pl. Ex. G, HES004290, Docket #: 187-9, pg. 17 of 25)(emphasis added). Thus, Plaintiff's Exhibit G authorized Sgt. Breimon to *recommend* remedial or disciplinary action for inefficient or incompetent performance, which could lead to effect a "tangible employment action" such as firing, failing to promote, reassignment with significantly different responsibilities. *Vance,* 133 S.Ct. at 2443.

### Plaintiff's Exhibit I

Plaintiff's Exhibit I is a Supervisor Management Log. Sergeants are directed to record activity in the Supervisor Management Log. Paragraph E provides that the Sergeant's Log will be

submitted to the field Lieutenant or to the District Executive Officer for approval. Paragraph I provides that all approved logs will be forwarded to the district/unit commander.

Part III provides the information to be included pertaining to performance and to corrective/disciplinary action taken. (Part III, B, 9). Part IV of Exhibit I provides for "Beat Status Checks to be conducted by supervisors and recorded in the log along with any corrective/disciplinary action taken.

Exhibits G and I thus establish that the City of Chicago delegated sergeants to be its "eyes and ears" regarding the officers' performance, required sergeants to log their observations for consideration by the upper command decisionmakers who have no occasion to observe officer performance on duty. This is exactly the situation the *Vance* court anticipated. This Court should reconsider and find, pursuant to *Vance,* the City of Chicago delegated responsibilities that gave sergeants substantial input into ultimate tangible employment actions taken against employees relating to performance. This Court should rule that under these circumstances Sgt. Breimon was a "supervisor" for purposes of Title VII. This Court should vacate the relief granted in Count I to City of Chicago and enter an order denying the City's Motion for Summary Judgment as to Count I.

**WHEREFORE**, Plaintiff **KELLY HESPE**, requests this Court grant this Motion to alter or amend judgment as to Count I, deny summary judgment to Defendant City of Chicago as to Count I for Title VII sexual harassment, and grant such other and further relief as may be equitable and just.

            **KELLY HESPE,**
            Plaintiff herein

            By: /s/ Daniel Q. Herbert
              One of Her Attorneys

The Herbert Law Firm
206 S. Jefferson, Suite 100
Chicago, IL 60661
(312) 655-7660